MAINE SUPREME JUDICIAL COURT                         Reporter of Decisions
Decision:    2016 ME 175
Docket:      BCD-15-481
Argued:      May 3, 2016
Decided:     December 1, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ARUNDEL VALLEY, LLC, et al.

v.

BRANCH RIVER PLASTICS, INC., et al.

HUMPHREY, J.

[¶1] This appeal involves a complex construction dispute between Arundel Valley, LLC, the developer of a facility for a butter manufacturer, and Branch River Plastics, Inc., a manufacturer and distributor of insulated roofing panels. After a six-day trial in the Business and Consumer Docket, a jury found in Arundel Valley's favor on its claims that Branch River breached implied warranties by supplying defective roofing panels. Branch River appeals from the court's (*Horton, J.*) denial of its motion for a new trial, arguing that (1) it was unfairly surprised by certain expert testimony at trial and (2) the court erroneously declined to adjudicate whether Branch River had disclaimed implied warranties. Because we agree with Branch River's

2

second contention, we remand the case for the court to determine whether Branch River's purported disclaimer of implied warranties was effective.

## I. BACKGROUND

[¶2] On December 28, 2012, Arundel Valley and Kate's Homemade Butter, Inc., filed a twelve-count complaint in the Superior Court (York County) against Branch River and other defendants alleging, inter alia, defects in roofing panels that Branch River had manufactured and supplied to Arundel Valley for a construction project. Branch River was named as a defendant in seven counts.[1] After the case was transferred to the Business and Consumer Docket, the court (*Horton, J.*) ultimately entered summary judgments in Branch River's favor on five of those counts.[2] Two counts remained for adjudication at trial, with Arundel Valley as the sole plaintiff and Branch River as the sole defendant. In those counts, Arundel Valley claimed that Branch River had breached the implied warranties of merchantability

---

[1] The complaint contained five counts against defendants other than Branch River; each of those counts was eventually dismissed, and none is at issue on appeal.

[2] The court also entered summary judgments in favor of Branch River's owner on all claims against him and ruled that Kate's Butter was not a proper plaintiff in the action.

(Count XI) and fitness for a particular purpose (Count XII) by providing defective roofing panels.[3]

[¶3] Before trial, pursuant to M.R. Civ. P. 26(b)(4), Arundel Valley designated James B. DeStefano, a professional engineer, as an expert witness. At trial, DeStefano testified, on direct examination, about two types of manufacturing defects in the panels that would affect the roof's performance: (1) manufacturing defects that created gaps *between* the panels,[4] and (2) manufacturing defects involving gaps between foam components *inside* each panel.[5] Branch River did not object to this testimony.

[¶4] During redirect, counsel for Arundel Valley asked DeStefano about a "third report," referring to a letter from DeStefano to an Arundel Valley representative that described "open joints between sections of [] foam within the panels." Counsel for Branch River expressed concern that Branch River had not received the "third report," and that it was surprised at DeStefano's testimony describing defects *inside* each panel. Arundel Valley's attorney

---

[3] The panels at issue are large structural insulated panels, or "SIPs," each of which is composed of a flat foam core covered on both sides with oriented strand board sheathing, creating an insulated sandwich panel designed to increase the energy efficiency of a structure.

[4] DeStefano testified, "[T]here's a gap here between the foam faces. But you'll notice that the skins, the [oriented strand board] skins, are in tight contact. So the installer putting this together, even if he was an expert at it, could not have physically gotten those panels any closer together."

[5] DeStefano testified, "We found that inside each individual panel, there was actually a space or a gap in between the individual blocks of foam, and there was no adhesive bonding it together."

argued that the letter was attached to a pretrial motion in limine and that Arundel Valley had otherwise made Branch River aware that DeStefano would testify about both types of defects. After some discussion, Branch River's counsel said, "if you're going to represent to [the court] that you produced [the letter] in some fashion, I'll accept that."

[¶5] The court suggested that counsel for Arundel Valley clarify with DeStefano that the letter concerned issues he had already testified about on direct examination. The letter was not offered as an exhibit or admitted in evidence. Branch River did not object to DeStefano's continued redirect testimony about the "third report" or the defect inside the panels, did not further address the issue on recross, and did not raise the issue again at trial.

[¶6] The jury heard testimony during trial that (1) all Branch River products came with a "standard" twenty-year warranty; (2) Branch River's president had told Arundel Valley it was voiding the "standard" warranty on the panels after issues with their installation first arose; (3) Branch River later sent an express warranty document to Arundel Valley, which included a disclaimer of implied warranties; and (4) Arundel Valley never signed that document. No document containing the "standard" warranty that Branch River purportedly voided was ever identified with specificity. Branch River's

Exhibit 21, a document that contains an express warranty and purports to disclaim any implied warranties, was identified by Branch River's president as the express warranty document that he sent to Arundel Valley after voiding the "standard" warranty.

[¶7] On the fifth day of trial, the court conferred with counsel in chambers to discuss jury instructions and a verdict form. The court and counsel placed the results of that conference on the record. After discussing the jury instructions, counsel for Branch River moved "to enforce the limitation on damages that is set forth in the . . . written warranty" and moved to admit the express warranty document. The parties and the court discussed Branch River's Exhibit 21, which was eventually admitted in evidence. The court then specifically asked Branch River whether it was going to argue to the jury that it had disclaimed implied warranties. Branch River unequivocally said that it was not going to do so and that Exhibit 21 should not even go into the jury room. Branch River emphasized that Exhibit 21 was for the court's review. In response, the court stated that the disclaimer issue may require a post-verdict ruling and deferred making a ruling on Branch River's motion at that time.

6

[¶8]  The next substantive discussion on the record about the express warranty and disclaimer came on the final day of trial after another chambers conference.  At the conclusion of that conference, and just before the jury was to hear the arguments of counsel and instructions from the court, the court raised the status of any factual or legal issues regarding the express warranty and made a "tentative legal ruling" that "Branch River did not have a right to impose a warranty on Arundel Valley."  The court also stated, "[M]y view of the evidence is that [the express warranty containing language disclaiming implied warranties was] not part of the contractual undertaking between the parties."  The court then added:

> The bottom line is I understand counsel have agreed that although the express warranty is in evidence and can be mentioned, et cetera, *the status of the express warranty is not going to be argued to the jury.  In other words, the only warranty issues and breach of warranty issues that the jury is going to be asked to decide are the two implied warranty counts* . . . .

(Emphasis added.)  The court then asked if any party wished to add anything further, and the following exchange occurred:

> [Branch River]:  As we discussed in chambers, our position is that [as] a matter of law, that the Plaintiff's . . . acceptance was irrelevant to the validity of the warranty, the application of the warranty to this case.  Further, it was the Plaintiff . . . that actually demanded that the warranty be reinstated and then we . . . accepted that demand and did, in fact, comply with the request.  Under those circumstances . . . we take the position that Arundel

Valley's again accepting it is not necessary. And I understand the [c]ourt's position.

[Court]: So it's pretty clear to me that to the extent there are any factual issues about the status of the reinstatement, the parties are not asking the jury to decide those issues. Those are left for the [c]ourt to decide. And I'm not suggesting there are any factual issues. [Branch River] may be correct, that this is a straight legal issue. But just so we're all on the same page, that's my understanding, is that—and I'll put it this way. *Any and all issues, legal or factual about the effect of the disclaimer and the status of the disclaimer are being left for the [c]ourt to decide.* Is that Plaintiff's understanding . . . ?

[Arundel Valley]: Yes, Your Honor.

[Court]: And Defendant's?

[Branch River]: Yes.

(Emphasis added.) Neither party raised the disclaimer issue again at trial.

[¶9] After receiving instructions on the two implied warranty claims, the jury deliberated and returned a verdict in favor of Arundel Valley, and the court entered a judgment on the verdict on July 13, 2015.[6]

[¶10] Two weeks later, pursuant to M.R. Civ. P. 59(a), Branch River moved for a new trial on multiple grounds, including that (1) it had been "ambush[ed]" by DeStefano's trial testimony regarding defects inside each panel and (2) the court erroneously decided that Branch River had voided the

---

[6] The jury awarded Arundel Valley over $1,000,000 in damages, but the award was reduced by the amount received from the settling defendants, resulting in a judgment of $660,080.40.

8

express warranty containing the disclaimer of implied warranties.[7] The court denied Branch River's motion, concluding that none of its challenges warranted a new trial. On the disclaimer issue, the court concluded that "Branch River was not entitled to judgment on the validity of its purported disclaimer of implied warranties, and its failure to request jury instructions to guide the jury's decision on whether Arundel Valley's purchase of the roof panels was subject to the disclaimer does not justify overturning the verdict." The court also stated, "[W]hether Branch River's disclaimer of implied warranties was valid as to Arundel Valley was, at least in part, a question of fact. The jury could have been duly instructed on this issue, but Branch River did not request any such instructions." Branch River timely appealed from the denial of its motion for a new trial.

## II. DISCUSSION

### A. Unfair Surprise

[¶11] Branch River contends that the court erred by denying its motion for a new trial because DeStefano's trial testimony regarding the manufacturing defect that caused problems inside each panel "constituted unfair surprise." "Because the trial court is in the best position to assess the

---

[7] Branch River does not challenge the court's decision that other grounds asserted in the motion did not warrant a new trial.

jury's reactions and motivations, we review its decision to deny a motion for . . . a new trial deferentially." *Seabury-Peterson v. Jhamb*, 2011 ME 35, ¶ 14, 15 A.3d 746; *see State v. Daluz*, 2016 ME 102, ¶ 46, 143 A.3d 800 (noting that such review is deferential based on "the trial court's unique ability to view the fairness of the proceedings"). We therefore review the denial of a motion for a new trial for a "clear and manifest abuse of discretion." *Seabury-Peterson*, 2011 ME 35, ¶ 14, 15 A.3d 746 (quotation marks omitted).

[¶12] The trial court determined that Branch River did not object to DeStefano's testimony at trial; that, if Branch River had objected, the court could have taken steps short of ordering a new trial to cure any problem; and that, in any event, no curative action would have been necessary because Branch River "was on notice of the substance of the testimony at issue." These determinations are supported by the record. Although there may have been some confusion among the parties' lawyers regarding the different types of manufacturing defects about which DeStefano would testify, the trial court did not err by concluding that the record of pretrial proceedings did not support Branch River's contention that the substance of DeStefano's testimony represented an intentional or unfair surprise. Under these circumstances, we cannot conclude that the trial court abused its discretion when it decided that

Branch River's argument regarding DeStefano's testimony was, first, unpreserved; and second, unpersuasive as a ground for ordering a new trial pursuant to M.R. Civ. P. 59(a). We therefore do not disturb the trial court's decision on that issue.

B. Disclaimer of Implied Warranties

[¶13] If Branch River effectively disclaimed all implied warranties, either through a "standard" warranty with disclaimers that was part of the parties' initial contract, or through the "express" warranty identified as Exhibit 21, it could not, as a matter of law, be held liable on the two claims at issue at trial: breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. *See* 11 M.R.S. §§ 2-314, 2-315, 2-316 (2015). Branch River argues that the court withdrew from the jury the issue of whether there was an effective disclaimer of implied warranties, failed to rule on that issue before the case went to the jury, and then denied the motion for a new trial because Branch River had failed to move to instruct the jury on that issue.

[¶14] Although the transcript is not entirely clear, we conclude that the court gave the parties the impression that it, not the jury, would decide any legal or factual issues concerning the purported disclaimer of implied

warranties. Contrary to Branch River's contention, however, the appropriate relief in this case is not to order a new trial—Branch River asked the court to make a ruling on the disclaimer issue on the evidence already before it, and a ruling on the purported disclaimer does not require a new jury verdict. We therefore vacate the judgment as to Count XI (breach of implied warranty of merchantability) and Count XII (breach of implied warranty of fitness for a particular purpose) and remand the case to the trial court to rule on "[a]ny and all issues, legal or factual[,] about the effect of the disclaimer and the status of the disclaimer," which is the ruling the court gave the impression it would make. The court may, in its discretion, entertain further argument from the parties on this issue.

[¶15] If the court rules, based on the evidence presented at trial, that Branch River made no legally operative disclaimer of implied warranties, the court must re-enter the judgment on the jury's verdict in Arundel Valley's favor. If, on the other hand, the court rules that Branch River did disclaim the implied warranties of merchantability and fitness for a particular purpose— by way of an express warranty or otherwise—it must enter a judgment in Branch River's favor on the two implied warranty counts.

The entry is:

> Judgment vacated as to Count XI (breach of implied warranty of merchantability) and Count XII (breach of implied warranty of fitness for a particular purpose). Remanded for further proceedings consistent with this opinion. Judgment affirmed in all other respects.

---

**On the briefs:**

Catherine R. Connors, Esq., and Michael J. Daly, Esq., Pierce Atwood LLP, Portland, for appellant Branch River Plastics, Inc.

Timothy J. Bryant, Esq., and Jonathan G. Mermin, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellee Arundel Valley, LLC

**At oral argument:**

Catherine R. Connors, Esq., for appellant Branch River Plastics, Inc.

Timothy J. Bryant, Esq., for appellee Arundel Valley, LLC